at all? Are you going to not complete this unit besides Mr. Hughes and your team to get help? Thank you. My name is Brad Hughes and as mentioned I represent the appellant here, Dr. Lenore. And with the court's permission I'd like to reserve three minutes of time for rebuttal. You may. Dr. Lenore will not pay the City of Rochester, Michigan, tens of thousands of dollars in cash, nor will he waive his legal claims, simply for the privilege of obtaining an up and down vote, a final decision, from the Planning Commission on the amended site plan that he submitted more than three years ago. Yet those are the conditions that the City has repeatedly insisted on before any final decision is made about the newly constructed dental clinic that you can see pictured at page 3223 of the district court record. The City is essentially holding its final decision here hostage to those conditions, cash and a waiver. And Dr. Lenore simply won't pay the ransom. That is the impasse between these parties which presents a ripe dispute. And we submit that it is a How long were those conditions told to your client? In other words, was there any effort to negotiate those conditions away over a sustained period of time? Yeah. I believe, Your Honor, that the first time the $40,000 cash and waiver was mentioned was at an October 23, 2013 meeting that's described in the affidavit of my client's And you filed suit in January of 2014. So it was only four months later? That's correct. And it does seem like a short period of time when you compare it to the period of time that's been at issue in several of the cases that are cited in the party's brief. And we understand that. And our position on that issue, Your Honor, is that the City here lost the benefit of the doubt, lost the, you know, the ability to claim delay as legitimate when they did not provide the second report of their own expert, Mr. Francis. And that was just earlier in October where he took another look at this project and he opined in a report that was never shared with my client until this litigation that the project in fact did reasonably comply with the standards that the parties here, you know, have been disputing. And it's very important for this Court to know that in order to resolve what's before you, you don't have to delve into the detailed Secretary of the Interior's standards for rehabilitation. And you don't have to decide whether the project that my client undertook did comply or did not comply with those standards. The only issue you need to decide is the issue that the magistrate judge resolved in our favor, which is that there's a ripe dispute here that needs to be adjudicated. And we submit that it should be adjudicated in the forum that the City itself chose by removing our state law case to Federal Court. But the district judge held that it wasn't ripe and essentially thought that your case was different from these two significant other circuit cases where longer term impasse existed. And I guess the concern that I have if I get right to the bottom of this is why is a three or four month debate between the two sides enough of an impasse to say that we don't have to have a final decision by the City? I think that although the concealment of Francis's second report did not occur until October of 2013, there were some facts and procedural issues that occurred earlier in the timeline that also support our characterization of what we have here as an impasse. For example, we haven't discussed yet the stop work order that the City imposed on the project in May of 2013. We haven't discussed the Planning Commission's decision the following month to continue that stop work order, even though my client's architect had met with representatives of the City, including some historical architects, and together the parties had come up with these 15 recommendations of how to bring this project into compliance with these disputed standards. So my client did all that, satisfied those 15 recommendations. Counsel, was that at the point where the counsel switched, as I understand your argument, counsel switched the obligation from rehabilitation of the property to preservation in Mid-Street? That's correct. Those minutes are the August 2013 meeting minutes of the Planning Commission at page 3338 of the District Court record. There is an indication that there were several members of the Planning Commission who were, they may have been confused about the, you know, what the original bargain here was. The bargain here, you know, originally my client's plan was to completely raze this old house that had mold on every wall, had been damaged by fire, was not on any federal, state, or local registry of any kind, and to put parking underneath to satisfy his parking obligation. The Planning Commission didn't like that plan because they viewed the home as having some historic value, and so the 2012 was, if you rehabilitate, if you reasonably comply with these rehabilitation standards, we will waive the significant amount of parking fees that you would have to pay since you're no longer able to put cars underneath this new structure. So that was the bargain back in late 2011, early 2012, and then, you know, it was from that point on that the disputes started happening. There was the initial finding by Mr. Francis that, in his view, the project didn't reasonably comply with the rehabilitation standards, but, of course, he later changed his mind about that. And so you're right. What I understood was there was a transition. He was going to raze it. Then they okayed it, and then they started rehabilitating the property. And eventually, when it was finished, they said, no, you were supposed to, it was supposed to be a preservation. That's correct. Is that just a play on, is it just word games? It's actually not word game because the standards, if you look at the standards, there are very different requirements if you're rehabilitating an old piece of property versus preserving it. Preservation is much more stringent and requires much more careful attention to the preservation of original materials and whatnot. Did the client ever meet those preservation standards, or did he try? He did not try. What he tried to do was reasonably comply with the standards for rehabilitation. And that was the, that were, those standards are in the minutes from the original deal. That's at page 1733 of the district court record. Would it even have, would it even have been possible for him to meet the preservation standards? Absolutely not, Your Honor. In fact, those very, those early minute, meeting minutes describe the deteriorated nature of this piece of property. The fire chief was actually at one of the early meetings talking about how when his crew showed up at the home, there was like water running all through the home. The home was seriously damaged. It really, as a practical matter, could not be preserved. So the deal here was reasonably comply with these rehabilitation standards, and we will waive this payment in lieu of parking. Very significant dollars. I believe it was $12,000 per space, but I may get corrected on that. So that's, it's, and from my client's point of view, he was willing to take on this task of reasonable compliance with the rehabilitation standards, but he simply couldn't afford to take on that extra cost and pay this significant payment in lieu of parking fee. And so that's why when the city first came to my client's architect with this $40,000 deal, pay us $40,000 and waive your claims, I mean, from my client's perspective, that was reneging on the whole, the whole understanding here. And so... Are you familiar with any cases that say one way or another that it's okay for a city planning commission to say, we'll give you a permit if you waive any rights that you have to bring suit or make other claims? Is there any case saying that's okay or it's not okay? I have to say, Your Honor, I'm not aware, I'm not aware of a case specifically about a waiver, but we did cite a few cases in our brief under the unconstitutional conditions doctrine that involve not, not a promise of a waiver, but a promise to pay money. Because it seems, you know, at least superficially, that it, that requiring people to waive their rights to sue, say, has the accoutrements of an unconstitutional condition in order to get a benefit of a permit, and I know you're not trying to get a permit exactly, but just using that loose language, in order to get a city permit to do anything, you have to do it. My client would agree with that, Your Honor, and in fact, as I recall, you joined an opinion for this court, the RSWW Kigo opinion that we cited in our brief, and there, you know, the Goose Island Brewery, of all places, was, you know, the deal there was, if you close your brewery early, earlier than 2 a.m., which is what they were, how late they were allowed to stay open under their permit, we're only going to grant you this permit that you're requesting if you agree to close at 11 instead of 2. And so that was the case where, you know, that kind of condition, this court looked unfavorably on that type of condition from a permitting authority. So I'm not sure exactly where the district court went astray from the magistrate judge's recommendation here, but I will note that if you read the pages of the district court's opinion where she takes on the cases that we relied on from the other circuits, she cites the Gilbert decision, which I believe is just, it's an inapplicable case for the following reason. In Gilbert, this was a challenge to a rent control ordinance, and under this rent control ordinance, if you had rental property in the town, you had to go to the permitting authority and apply for a certain permit to pull that property off the market. And the problem, the big problem in Gilbert was that the folks challenging the ordinance had never bothered to apply for the permit. So that's why there was a finality problem there. That's why there was a rightness problem in Gilbert. Here, of course, the facts are completely different. My client applied for and obtained special, you know, a special permit from the City of Rochester. He applied, he had his original site plan approved, and then after problems developed about the construction, you know, he went back and tried to fix them, those 15 recommendations that were satisfied. And now he's had his amended site plan pending for decision. Looking at her decision on page 38, it looks like she says, hey, you didn't give the city, the planning commission, enough time to work with you. And she explicitly is distinguishing between Sherman and Del Monte on the one hand, and your case on the other. Is that, in some ways, a fact determination that we should defer to as a finding of fact by the district judge here? If it is a factual determination, we believe it's clearly erroneous. But I also believe, and this kind of goes back to your original question about the delay, we believe that the city lost the ability to hang its hat on continued negotiations and more delay once they failed to share Mr. Francis's second report, opining that reasonable compliance had been achieved with these standards. Counsel, we will give you your rebuttal time, of course, but your primary time has expired. Thank you, Your Honor. Good afternoon. May it please the Court, Marcy Stepanski on behalf of the defendant, Anthony Lee of the City of Rochester. First of all, I'd like to just point out to the Court that contrary to what the plaintiffs have argued in their briefs, this is not a case of first impression. The lower court passed on one issue and one issue alone, and that was the decision with respect to finality. The court said deprived it of jurisdiction. Correct. The court did not consider whether there was exhaustion of state remedies. That's not been decided by the court below, and while plaintiffs may attempt to obfuscate the court's focus here, the issue before this court is really clear and truly supported by decades of precedent. As the court's aware, this case started out with an agreement that the plaintiff would try to rehabilitate the structure in exchange for a very sizable waiver of a parking fee, and that parking fee is not something that's extorted as they're trying to allege with business owners. This is something that's regulated. It's universally applied. But actually, counsel, isn't the question here whether or not having decided that it would be all right for this dentist to rehabilitate this property that was in such poor condition, the city can't then pull back and say, we were just kidding. You can rehabilitate it, but we're never going to give you a permit, as I read it, until you pay this kind of kickback to make it even. So that's my worst way of saying it so that you can give me your best response. Sure, Your Honor. First of all, just to cover briefly the difference between preservation and rehabilitation, there are four standards in the SOI, and it's sort of a sliding scale. There's preservation is obviously the most rigorous, and then there's rehabilitation, restoration, and reconstruction. But do the minutes say that this was approved for eventually for rehabilitation? That's correct, Your Honor. So should we talk about preservation anymore? Well, rehabilitation actually encompasses some degree of preservation. When you look at the standards, and it's actually in the appellant's brief itself where it's defined, rehabilitation incorporates some degree of preservation where possible. In this situation, the plaintiff was approved for certain things, like retaining the façade of the original home. What they did is they went in and they tore it down to the studs. They removed all of the siding, all of the shingles, the original façade, the front door. Their own historic expert looked at this and said he called it carnage, and he said it was the worst attempt at rehabilitation that he's ever seen. And then they disposed of the materials so that the city couldn't even verify whether any of those materials could be rehabilitated, could be preserved, could be used for the construction of the home, for the restoration of the home. At some point, though, the agreed-upon, we'll call him the arbiter, the agreed-upon arbiter at some point came back and said it passes. Well, initially what Ed Francis said is that it's no. But then I'm just talking about eventually. This is the report that was, we're told, not disclosed. Well, two things, Your Honor. His purpose in that second report was something entirely different. He was looking at coming up with a formula to assist the city in trying to figure out, now that they have violated the bargain for agreement, now that they didn't hold up their end of the deal, what do we do about the parking waiver? Do we completely obviate it, or do we still give him some sort of parking waiver that all the other business owners have to pay if they use public parking? And what they did is they asked the plaintiff for assistance in coming up with that sort of formula to propose something. They were resistant to doing so. So the city went back to Ed Francis and said, can you prepare another report to assist us in determining what that waiver should be? So that's when Ed Francis went back and he looked at it and said it's 58% compliant, in his opinion. And he went through each factor and determined what was compliant and what was not. So instead of being 47% compliant, now it's 58% compliant. But that was to be used for the parking formula, and that doesn't mean that the planning commission is bound by his opinion. The planning commission never delegated its decision-making authority to Mr. Francis. Why doesn't all of this discussion that you're giving us show that it is futile for the doctor and Lily to ever think that the city is going to give them a final argument? It's absolutely not futile, Your Honor. And just to address the $40,000 suggestion too, because that impacts this, that was actually part of settlement negotiations after the plaintiffs had attorneys involved and the city recognized that there could be litigation involved in this, litigation was threatened. They said, okay, city attorney, get together with plaintiff attorneys and try to figure something out. So when someone says, okay, well, why don't you, how about if we're not going to do $480,000, obviously, and if we take the percentage, maybe not even do that, how about if you contribute $40,000 to the parking fee? So in the city's view, what does the plaintiff here have to do in order to get possession or the permit or whatever the final decision is here? What the city wanted them to do, and they have never done, was submit amended site plans that show what was originally approved and what was actually done and why certain things were changed. What they did instead is they submitted as-built drawings, which is really the point of that. I'm sorry. I would like to just get this answer. As you're standing here today, what does the plaintiff have to do? Now, your first part of this has been amended site plans. Amended site plans. Does that mean they win, they get their permit if they provide an amended site plan, or are you going to evaluate the amended site plan? Well, they would absolutely have to evaluate the amended site plan because, Your Honor, in November of 2013 still, just two months before the plaintiffs filed suit, their architect was presenting a PowerPoint presentation to the planning commission showing what things had been done and attempting to address certain deficits. The answer that I'm hearing from you is there are lots of things that have to be done before, in your view, the city will give permission to the plaintiffs. Not necessarily. I think what the city is, well, what I know the commission is looking for are amended site plans that show what was approved and what was actually done so they can make the determination between the two and a resolution to whatever the parking issue may be. They may go before the planning commission and find out that they don't have to pay anything for parking, that they don't have to pay anything for the tree removal. We don't know because they didn't seek a final decision. What the plaintiff did instead. So if the plaintiffs provide an amended site plan and a statement, we are not going to pay the $40,000 of parking, let alone the $400,000 plus that was originally demanded. And suppose they say, and we refuse to waive our rights to bring any lawsuit or any other revenue. All those three things happen. I'm sorry, I didn't mean to interrupt. I'm just trying to find out because the fact that we're having this long discussion makes me think it is futile. It's so not futile, Your Honor. There are so many things that they. So if those three things happen, then the city planning commission will decide we will give a permit or we won't give a permit. Then they get an answer. Then they have a final decision. Then they get an answer and then they can take their case to federal court and say, this is what we requested and this is what was denied or this is what was granted. And then, only then can the court really evaluate if there was a taking, what kind of a taking there was. If they did those three things, and we have this hopefully on tape so they know what it is. If they did those three things, the city would promise to give a prompt answer. Absolutely. It would be a final decision that then could be the basis. They would probably go to state court first as they did here because of the exhaustion requirement under Williamson. But you, the city, removed the case from the state court where the state remedy could have happened. The city removed it to federal. We did that because it wasn't just an exhaustion case. There was also the finality component, too. There are the two prongs. And this wasn't just a matter of exhausting state remedies. It was also whether there was a final decision ever obtained from the planning commission. And that, there's... And you didn't want to be in state court to have the... Well, we wanted a federal court to determine the federal issue. There's a lot more federal case law on finality and ripeness than there is state case law on it. And if we're never allowed to do that, if we're never allowed to remove federal claims to federal court and then have the court determine whether there has been finality or not, I'm not sure when federal claims ever get to federal court. But why wouldn't you, the city, love to be in state court? I'm sorry, Your Honor? Why wouldn't you, the city, love to be in state court where the original action was filed? Because the federal courts have specific expertise in dealing with federal claims and federal issues and federal ripeness. I mean, Williamson all the way down, there's a litany of cases where the federal court is intimately familiar with determining finality. Does the state court have a ripeness requirement? Does the state court have a ripeness requirement? I can't answer that. I don't know right now. While we're talking about that, finality and exhaustion are both prudential rather than strict jurisdictional concerns, are they not? They are, Your Honor. But, again, the cases are very few and far between. It's a very narrow exception. Cases are few and far between where the courts disregard that, disregard the ripeness concerns. The overwhelming body of case law applies it. There's no reason whatsoever in this case to, there's not something unique about this case that would suggest to this court that those concerns should be disregarded. I mean, really, from beginning to end, it was about two years. The process is not that long. They got approved within four months of their original site plan request. They moved along. They violated. It's a stop work order, right? They ripped out a gas line. They hit a water main. They did all kinds of excavation that was done without the plaintiff on site because he was off big game hunting. And so the city had to go in, in his absence, and actually rectify it. When you bring that case to federal court, I assume you and your client realized that you had this ace in your pocket to say there was no exhaustion. But you also knew there was no way to exhaust once there was removal, right? Do you mean finality or are you, do you mean exhaustion or finality? Finality. Well, we don't know what the court is going to decide with respect to finality. I mean, we're not clairvoyant. I mean, obviously, we thought that that was a problem and an issue, but we wanted the federal court to tell us. Not for your client. Pardon? It was a problem. This is awful. You can't hear us. Sorry. The finality was a problem for which side? Not for your client. Well, there was a question of whether there was a final decision issue, which was a problem for everyone because how could the federal claims be evaluated until the planning commission told them what they can and cannot do and gave them a decision? You know that they won't get relief, I suppose. But they don't get the relief for finality purposes from the state court. They get relief for finality purposes from the city and the planning commission who determines what they can and cannot do. And they had abandoned that. The plaintiffs had abandoned that. I understand. Thank you. Can you give me a case that supports the idea that the city can say, we will give you a permit if you waive your rights to bring suit in any jurisdiction? Your Honor, I don't know if there is a case that says that, and we're not contending that that's an ultimate condition in this case. What happened at that point, those are really ---- It's not an ultimate condition, but it was a condition that you, the city, said he should sign off on, right? Actually, what they did is they created a subcommittee and directed the parties to go talk about it because at that point litigation had been threatened. But it's not that the plaintiff had gone back after that and said, here's our amended site plan, all the deficiencies have been corrected, we're not going to pay the parking fee and we're not going to waive our claims and do with it what you ---- They may find that the planning commission was amenable to all of that. The reason why there was a directive to go and talk about it and discuss waiving claims was because there was threatened litigation. So, hypothetically then, could the city, if everything else were agreed upon, could the city say, we insist, plaintiff, that you waive your right to sue in any jurisdiction? Could the city impose that as a requirement, hypothetically? I would think not. I wouldn't recommend it to my client and I don't think that's what the city was hinging this on. I think what the city wanted to do was get the parties to discuss this, to get it resolved and get them in there. The city has no interest in having this property stand vacant. They were trying to move the process along. It's more or less a threat. I'm sorry. It's more or less a threat to the other side to say ---- Not a threat. Not a threat, Your Honor. I mean, when you consider what that directive was in context of the series of events that occurred and what was occurring at that meeting when the plaintiff's attorney was threatening litigation, it was go talk about it. We're going to create a subcommittee. Resolve the issues quickly. See if you can resolve all of the outstanding issues. If you can obtain a waiver of constitutional claims. If you can agree on a parking amount. If you can come to us and give us some kind of formula that you want to propose in terms of what you think the parking should be. Because they did obtain the benefit of their bargain, but now they're trying to get out from under holding up their end of the deal. So the stop work order, I'm changing focus, the stop work order was in May. Yes. And has any further work been done since then? Actually, they did hire another architect, and I'm not really sure if it was exactly just before May or right after the stop work order, but they went ahead and unilaterally did some changes, modified the property, and that was another problem because that person had no familiarity with the original site plan that was approved, and in addition to that had no understanding of the historical context and what was supposed to have been done. So this building, I mean, as it's built, is not unlike many other buildings in the area. It doesn't retain the historical value or the historical character, which was the whole point in giving the plaintiffs the significant special projects approval and parking fee waiver. So I guess the answer is yes, some work was done after the stop work order. They had continued to work prior to that. There was some work done after the stop work order. Is the work completed now? It's almost completed by their admission. There are some inside things that need to be done, interior things that need to be done. So could the city promise as a result of this argument that it would reach a final decision within a certain number of months, say three months, you could promise that you could do that? Absolutely. They stood ready to render a final decision at any time that they brought them a final package. They just kept changing things. So it's conditional on the final package requirements? Well, what happened is they did the PowerPoint presentation in November and they had submitted the documents the date of the meeting. They didn't submit it ahead of time for anyone to be able to review them or get any kind of reports from their planner. Then in December they had submitted a different package, one that was different from the one in November, and then it was upside down and backwards and all kinds of things, and they again submitted it at the meeting. So they just didn't do the things that they were required to do and do them in a timely fashion, but they want special treatment and they're trying to paint the city as the ones who are the bad guys here. Really the city is trying to push it and move it along and get it off their plate. Counsel, your time has expired. Thank you, Your Honor. Thank you. Just very quickly I'll try to respond to some of the points raised here. I think the presentations you've heard today just underscore the fact that these parties are at an impasse, they're at loggerheads. We need a judge to sort this out. We're fine if that judge is the one that the city chose when they removed the case, but the chairs in this clinic, there are supposed to be 18 chairs in this clinic, and they've been sitting empty since May of 2013 when this stop work order was first put on. Very quickly, a couple of the points that were raised by the city here. The guy who called this the worst attempt at rehab he's ever seen, that was Mr. Dzurman who was at the meeting described in our architect's affidavit where they came up with the 15 recommendations that would solve the problem. Those recommendations were implemented, and yet still we have no final decision. You know, the city says that they stand ready to make a decision. Well, what's been holding them back? The second report of Mr. Francis that they mentioned, as we describe in our brief, it's simply- Counsel, you would be perfectly satisfied, I gather, if the city's final decision was no. We would certainly challenge the decision, Your Honor, to the extent we weren't precluded from doing so under some res judicata problem. But, I mean, we would love to have a final decision, but we don't need one here because we're at an impasse. And that's the standard this Court set forth in the Bantam case. The second Francis report is characterized as a report that had to do with calculating a parking penalty. But I urge you to look at that report at page 3384 of the record. Parking, I don't believe Mr. Francis mentions parking anywhere in the main text of that report. It was a re-evaluation, that was the word he used, a re-evaluation of whether the property complied with these disputed standards. And what makes the conclusion? He opined that it reasonably complied. And he also said that it, you know, made some comment about, and one concern that the city always had here is this is right on the border between the residential district and the main business district, and he believed that the project, as completed, you know, maintained that residential character where it was done. The other thing I just mentioned briefly, we cited the recent decision from this Court in the A Forever Recovery case. In that case, this Court affirmed a fee award that was given as a sanction to a party who did exactly what the city did here, you know, removed a takings claim to federal court only to turn around, you know, later and move for dismissal. The trial court in that case deemed that a sanctionable piece of procedural gamesmanship, and this Court affirmed, and in doing so, cited the Sansada case that we have relied on. We, at this point, I just think, you know, under the Banham standard, these parties are at an impasse and they're crying out for an adjudication of this dispute. Thank you. Thank you, counsel. Your time has expired. The case will be submitted.